UNITED STATES, Appellee

v

WILLIAM L. CARROLL, Seaman, U. S. Navy, Appellant

10 USCMA 16, 27 CMR 90

No. 11,511

Decided November 14, 1958

*Lieutenant (jg) Joseph A. Califano, Jr.,* USNR, argued the cause for Appellant, Accused.

*Major Ted H. Collins,* USMC, argued the cause for Appellee, United States. With him on the brief was *Major Charles R. Larouche,* USMC.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of attempted murder and robbery, in violation, respectively, of Articles 80 and 122, Uniform Code of Military Justice, 10 USC §§ 880, 922. A divided board of review affirmed the findings of guilty and the sentence, which includes a dishonorable discharge and confinement at hard labor for ten years.

Four issues are before us. Two are here on our grant of the accused's petition for review and two are presented by a certificate of The Judge Advocate General of the Navy for review under Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867. The principal issue concerns the sufficiency of the evidence to support the findings of guilty.

The chief prosecution witness, a taxi driver, specifically identified the accused as the person who robbed him in the early evening of March 14, 1957. The witness knew the accused because the accused had previously pawned a camera with him. The accused admitted he was a passenger in the victim's taxicab, but maintained he left the vehicle at his ship's berth in the Pearl Harbor Naval Station, and that he was actually with a shipmate at the time of the alleged incident. Evidence of the mileage covered by the taxi and differences in time support the prosecution's witness and mili-

tate against the accused's claim of alibi. As Member Reynolds, the dissenting member of the board of review, observed, if "the complete truth" of the taxi driver is conceded, "the testimony of the alibi witnesses would not be sufficient to create a reasonable doubt of the guilt of the accused." He, contrary to his brothers, was not convinced of the driver's "complete truth," and, therefore, concluded the accused's guilt was not established beyond a reasonable doubt. However, this Court cannot weigh the evidence or determine the credibility of the witnesses. These are matters for the triers of the facts. The court members chose to believe the complaining witness, and to give credit to the circumstances corroborating him. The witness's testimony is neither so inconsistent nor so discredited as to be unbelievable as a matter of law. United States v Dixon, 6 USCMA 484, 20 CMR 200. With the driver's testimony, the evidence is patently sufficient to support the findings of guilty. We conclude there is no merit to this assignment of error.

The accused's second claim of error relates to the use of the Manual for Courts-Martial by the ▉▉▉▉ court in its closed session deliberations on the findings and sentence. The case was tried before our decision in United States v Rinehart, 8 USCMA 402, 24 CMR 212. So far as the findings are concerned, there is no possibility of prejudice in regard to the robbery charge. The only real issue at trial was the identity of the accused as the criminal. Determination of that issue depended entirely upon the credibility of the several witnesses. Consequently, nothing in the Manual discussion of the offense, or in the paragraph referred to by the law officer, could have misled the court members or influenced them against the accused. United States v Vara, 8 USCMA 651, 25 CMR 155. As to the attempt charge, our holding on the instructional issue certified by The Judge Advocate General makes consideration thereof unnecessary. ▉▉▉▉ sary. With regard to the sentence, the nature and the circumstances of the offense indi-

cate clearly that there is "no fair risk the court-martial might not have separated the accused from the service if the Manual had not been used" in the sentence deliberations. United States v McQuaid, 9 USCMA 563, 567, 26 CMR 343.

Moving to the certified questions, we consider first whether the specification of Charge I states an offense. In material part, the specification alleges that the accused did, "while perpetrating a robbery, attempt to murder Ben Portuguez by shooting him in the right leg with a .45 caliber pistol." Before the convening authority, and again before the board of review, defense counsel contended that the specification purports to set out an attempt to commit a felony murder. He asks, "How does one attempt an offense when the offense does not become of such character until consummated?" It was also contended that it is impossible to kill a person by shooting him in the leg. At both levels of appellate review, the defense arguments were rejected. It was held that the words "while perpetrating a robbery" were surplusage. In the brief before this ▉▉▉▉ Court, appellate defense counsel concedes that, while "inartful," the specification is sufficient to state an offense. The concession is appropriate. The quoted phrase is an unnecessary statement of the evidence of the surrounding circumstances concerning the attempt. As far as the claim of ▉▉▉▉ impossibility of effecting death by shooting a person in the leg is concerned, we can imagine many situations in which the infliction of a gunshot wound in that part of the body might directly lead to the victim's death. Be that as it may, an attempt is an overt act performed with the specific intent to commit the offense charged—in this case, murder. Article 80 (a), Uniform Code of Military Justice, 10 USC § 880; Manual for Courts-Martial, United States, 1951, paragraph 159; Wooldridge v United States, 237 Fed 775, 778 (CA 9th Cir) (1916). Whether death can actually be induced by shooting a victim in the leg is not the question. Rather

the question is whether the means used were "apparently adaptable" to the desired end. United States v Dominguez, 7 USCMA 485, 487, 22 CMR 275. We have no hesitancy in holding that shooting a person in the leg with a .45 caliber pistol is a means "apparently adaptable" to effecting his death. We conclude the specification states an offense in violation of Article 80, Uniform Code, supra. We, therefore, answer the first certified question in the affirmative.

The second certified question is whether the instructions in regard to the specification of Charge I are correct. Government counsel concede that the instructions are erroneous. The law officer instructed the court-martial it must find that the accused entertained the "specific intent to commit the offense of murder." He then proceeded to define the essentials of murder. In his definition, he included a statement to the effect that a homicide is murder when committed in the course of an "attempted perpetration of a felony, in this case, . . . robbery." Member Reynolds, who dissented in the board of review below, held that there is a fair risk the court-martial was confused by the instruction. We agree with his conclusion. The court-martial could reasonably believe, on the basis of the instruction, it was sufficient to find merely that the shooting occurred in the course of a robbery. It might therefore conclude it was unnecessary to find that the accused entertained a specific intent to kill; the latter finding, however, is required by the allegations of the specification. The second certified question is answered in the negative.

The findings of guilty of Charge I and its specification and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Navy for resubmission to the board of review. In its discretion, the board of review may dismiss Charge I and its specification and reassess the sentence on the basis of the remaining findings of guilty, or it may order a rehearing on that Charge and the sentence.

Judges LATIMER and FERGUSON concur.