**UNITED STATES, Appellee,**

v.

**Private E–2 Kirk S. WHITFIELD, SSN 253–94–9720, United States Army, Appellant.**

**CM 436379.**

U. S. Army Court of Military Review.

30 May 1979.

---

**2.** Appellant did not object to the admissibility of the Notice of Cancellation form.

Felker W. Ward, Jr., Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain Joseph W. Moore, JAGC.

Captain Richard A. Canatela, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Captain Douglas P. Franklin, JAGC.

Before MITCHELL, DRIBBEN and FELDER, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

DRIBBEN, Judge:

Appellant was convicted of attempting with premeditation to murder a fellow sol-dier. In our opinion of 11 December 1978, we concluded that premeditation is not an element of the offense of attempted murder. We further determined that inclusion of premeditation in the charge gave the government counsel an impermissible advantage in argument. Thus, we affirmed only so much of the Charge and its specification as found that appellant, at the time and place alleged, attempted to murder Jerome S. Smith by means of cutting him with a razor blade, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. Reassessing the sentence we approved, *inter alia,* only seventy-two months of the ten year adjudged sentence to confinement. We have now reconsidered that opinion pursuant to appellant's motion.

In response to our order, both sides have submitted briefs on the following specified issue:

IN THE SPECIFICATION OF THE CHARGE OF ATTEMPTED MURDER, WAS IT ERROR TO ALLEGE THAT THE APPELLANT ACTED "WITH PREMEDITATION?" ASSUMING SUCH WORDING CONSTITUTED ERROR, HOW WAS THE APPELLANT PREJUDICED?

We are persuaded by the government's brief.

█ Murder with premeditation statutorily requires a sentence which includes death or confinement for life. Article 118, UCMJ, 10 U.S.C. § 918. However, the punishment for a conviction of attempt, in violation of Article 80, may not include death, nor confinement in excess of twenty years. Paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition) [MCM 1969 (Rev.)]. Therefore, inclusion in the specification of the aggravating factor of premeditation was unnecessary "surplusage." *United States v. Carroll,* 10 U.S.C. M.A. 16, 18, 27 C.M.R. 90, 92 (1958). *See United States v. Kinder,* 14 C.M.R. 742 (A.F.B.R.1954).

█ Our reconsideration of the case leads us to the conclusion that the surplus

language in the specification did not prejudice the appellant. Premeditated murder is murder committed after the formation of a specific intent to kill someone and consideration of the act intended. Paragraph 197b, MCM 1969 (Rev). On the other hand, attempted murder requires proof of a specific intent to kill but not of the consideration required in premeditated murder.

In this case, because the specification contained the unneeded allegation, the court members were instructed that they would have to find the accused had considered the act he intended to bring about in order to convict him of the offense as charged. The members did so find. We do not believe this invalidated their implicit findings as to the other elements of the offense of attempted murder.

Regardless of whether "premeditation" was included in the specification, the Government would have introduced the evidence they did. That evidence showed that the appellant and his victim had earlier had a conflict involving fisticuffs; that later the victim went to his room to sleep while appellant eventually went to the barracks latrine where he ripped open an aluminum can which contained disposed razor blades; that he went to the victim's darkened room and cut him on the face and neck with one of the blades. The resulting wound required sixty-two stitches to close. The evidence of a specific intent to kill and of premeditation was co-extensive and thus no irrelevant evidence was brought before the court by the government proving premeditation.

Further, we now find that the charging of premeditation and trial counsel's argument did not cause the members to convict appellant because he was a "bad man." The Government simply placed an unnecessary burden upon itself of proving an unneeded element. Additionally, we find that appellant's defense was not materially misled by the charging of the offense. The thrust of that defense was to attack the sufficiency of the evidence proving the specific intent to kill. The defense counsel pursued his attack upon the proof of specific intent from the beginning of the trial. His *voir dire* of the members included an inquiry of their ability to follow instructions about the effect of voluntary intoxication on specific intent. The defense case consisted of witnesses, including appellant, who testified about his supposed intoxication from liquor and drugs. In his final argument the defense counsel emphasized what he believed to be a lack of evidence of intent to kill. Based on the evidence, that was the only viable strategy for appellant.

■■ Contrary to the dissent of Judge Felder, the issue of self-defense was not raised by the evidence. Self-defense is available when there are reasonable grounds for the accused to apprehend that he was about to be injured. Paragraph 216 c, MCM 1969 (Rev). In this case the only two witnesses to the almost deadly occurrence were the victim and appellant. The victim's testimony totally negated the theory of self-defense, as he testified that his throat had been cut while he was asleep in his bed. The appellant, who told a different story, also did not raise evidence of self-defense. He maintained that he had gone into his victim's dark room, armed with a razor blade, only to talk about the earlier altercation the two men had. He testified that he was not fully cognizant of what was happening because of his use of drugs. He did not testify that the victim rushed toward him and tried to strike him with a chair; rather, he said the chair had "gotten in between" them, that the victim "was jabbing back" at him with the chair, and that the chair was then dropped. At that point appellant said he took two swings at the victim thereby slashing his throat. He also said he really did not know why he swung, but he believed the fact he was frightened had something to do with it. At no time did he assert an apprehension that death or grievous bodily harm was about to be inflicted upon him nor did he express a fear of some lesser harm. Thus, the parties below all correctly agreed that the issue of self-defense had not been raised by the evidence. *See United States v. Rine,* 18 U.S.C.M.A. 421, 40 C.M.R. 133 (1969);

*United States v. Regalado,* 13 U.S.C.M.A. 480, 33 C.M.R. 12 (1963).

Accordingly, our decision dated 11 December 1978, is withdrawn. The findings of guilty and the sentence are affirmed.*

Senior Judge MITCHELL concurs.

FELDER, Judge, dissenting:

The appellant was convicted by a general court-martial with members of attempting with premeditation to murder a fellow soldier. The adjudged and approved sentence includes a dishonorable discharge, confinement at hard labor for ten years. In a memorandum of opinion dated 11 December 1978, Judge Dribben and I, the only judges participating, decided that premeditation is not an element of the offense of attempted murder and should not have been alleged. We determined that the charge gave the government counsel an impermissible advantage in argument on findings and sentence. We affirmed the findings of guilty of attempted murder, excising the words "with premeditation," and reassessed the sentence by reducing confinement at hard labor to six years.

The appellant subsequently filed a motion for reconsideration, seeking a rehearing on findings. Over objection by the Government, Senior Judge Mitchell and Judge Dribben on 30 January 1979 granted the appellant's motion for reconsideration and concomitantly requested both sides to file legal briefs on the issue: whether it was error to allege in the attempted murder charge that the appellant acted with premeditation, and if so, how was he prejudiced.

The decision by Judge Dribben and I resulted from compromise, one which I am willing to adhere. Now that the decision has been vacated, I no longer feel restrained by our mutual concessions. The charge is an outgrowth of a confrontation between black and white soldiers in a foreign country. The appellant was defended by a civilian practicing law in Germany. The result is that he was overcharged, oversentenced * and underrepresented. The majority do not recognize this discriminating fact, and when it was brought to their attention, they chose to reject it. Yet, there are no instances in the annals of military justice where an accused has been charged with attempted murder with premeditation.

Even assuming that the mere allegation of premeditation did not prejudice the appellant, the inclusion of it in the charge generated considerable confusion at the trial. The majority fails to address this fact. At one point the trial judge remarked, " . . . very frankly, I wish I had taken the bull by the horns before this trial started and got that [with premeditation] stricken. . . . The basis on which I would consider ordering those words stricken is that in my opinion it interjects . . . unnecessary confusion." At another point he commented, "It just crossed my mind as being a little bit ridiculous. But now it's created a ridiculous problem. It makes the instructions a little more confusing, in a way, too."

In his instructions to the court members, the trial judge advised them to consider

---

* The dissenting judge states that the charge involved in this case is an outgrowth of a confrontation between black and white soldiers in a foreign country. There is no evidence in the record of trial to suggest that the question of race was ever involved. To the contrary, the evidence presented by both the prosecution and the defense established that anywhere from five to eight soldiers including the victim were engaged in drinking and what they called "horseplay," "big horseplay, a bunch started wrestling . . . ", "mostly everybody in the room was involved." In fact, it was brought out by the defense that everyone in the appellant's unit got along pretty well and that there

was "a little bit of socializing going on in the billets that night." The appellant apparently was pulled into the horseplay by the victim and this resulted in an altercation between them which was broken up by their mutual friends. This occurred prior to appellant's attempted murder of the victim. The record is also without any evidence whatsoever of the charges being preferred and processed because of racial prejudice toward appellant.

* This conclusion is the result of a personal comparative analysis of cases reviewed by this panel during the past year involving crimes of violence.

attempted murder and intentional infliction of grievous bodily harm as offenses included within attempted murder with premeditation. He also informed them that voluntary drunkenness should be considered in determining whether the appellant had sufficient mental capacity to commit attempted premeditated murder, an offense not charged. To instruct on a greater uncharged offense is grounds for reversal. There is always the possibility that the court members were misled in resolving the appellant's guilt. *Cf. United States v. McGee,* 1 M.J. 193 (C.M.A.1975) (failure to instruct on lesser offense). The trial judge made skillful efforts to give lucid instructions but admittedly referred to the portion dealing with premeditation as *ad nauseam.* At the completion of his charge, the president requested and received additional clarifying instructions on the difference between premeditated design to kill, intent to kill and intent to inflict grievous bodily harm.

The representation the appellant received also suffered. The trial defense counsel expended his energy trying to negate the aggravating factor of premeditation, while limited defense was offered against the substantive offense of attempted murder.

I believe that the appellant is entitled to adequate representation and to have his guilt or innocence determined by court members free from confusion as to the law. When these entitlements are infringed upon prejudice results. The record clearly shows that the Government gained an impermissible advantage on findings and sentence by alleging an aggravating factor.

The appellant testified that the victim jumped out of bed and tried to "poke" him with a metal folding chair; that he was scared and frightened by the victim's aggressiveness; and that he swung at the victim to repel him. He further testified that he neither realized that he had cut him nor did he intend to do so. Despite evidence of his intoxication, the appellant's testimony was sufficient to raise the issue of self-defense.

The test to determine if self-defense is raised is whether the record contains some evidence which, if credited, could raise a reasonable doubt whether the appellant acted in self-defense. Fear of death or injury is not the only test to be applied as the majority has done. *United States v. Holly,* 18 U.S.C.M.A. 413, 40 C.M.R. 125 (1969). It matters not that the appellant is the sole source of the evidence. He certainly has the capacity to testify directly to the intent, knowledge, or other *mens rea* which characterizes his acts either as criminal or legally blameless. Nor does it matter that his testimony might be implausible, incredible or unreliable. It must be evaluated by the factfinders. Trial judge and appellate bodies must not interfere with the function of court members and deprive the appellant of his right to a trial on the facts, when the credibility of his claims is found wanting in light of a strong case against him. *United States v. Thornton,* 19 U.S.C.M.A. 140, 41 C.M.R. 140 (1969).

Prejudice is inherent from omission of instructions on an affirmative defense reasonably raised. In my opinion, the findings of guilty should be set aside and the appellant given a fair trial at a rehearing.